# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) Case No.: 19-cv-1979<br>) |
| R.W. DUNTEMAN COMPANY, DU-KANE ASPHALT CO., CRUSH-CRETE, INC., PAUL DUNTEMAN JR., JEFFREY DUNTEMAN, ROLAND DUNTEMAN III, MATTHEW DUNTEMAN and AUDREY B. COFFEY, as Personal Representative of the ESTATE OF JANE ELIZABETH DUNTEMAN. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) *Jury Trial Demanded* |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Hanover Insurance Company ("Hanover"), by and through its attorneys, BatesCarey LLP, and for its Complaint for Declaratory Judgment, states as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage dispute. Hanover seeks a declaration that it has no duty to defend or indemnify Defendants, Du-Kane Asphalt Co. ("Du-Kane"), Crush-Crete, Inc. ("Crush-Crete"), Paul Dunteman Jr., Jeffrey Dunteman, Roland Dunteman III, and Matthew Dunteman[1] in connection with a lawsuit brought against them by Defendant Audrey B. Coffey, as Personal Representative of the Estate of Jane Elizabeth Dunteman (the "Estate").

---

[1] Defendants Paul Dunteman Jr., Jeffrey Dunteman, Roland Dunteman III, and Matthew Dunteman are collectively referred to herein as the "Dunteman Brothers."

2. Hanover issued two consecutive liability insurance policies to Defendants, R.W. Dunteman Company ("R.W. Dunteman"), and **Insured Entities**[2] Du-Kane and Crush-Crete. Each policy is a "claims made and reported" policy, and, thus, any **Claim** reported to Hanover for coverage under one of the policies must be (a) first made during the **Policy Period** of that policy, and (b) reported to Hanover as soon as practicable, but in no event later than 90 days after the expiration of that policy. Otherwise, there is no coverage for the **Claim** under that policy.

3. The Estate's lawsuit constitutes a **Claim** first made during the **Policy Period** of the first Hanover policy, not the second Hanover policy. Therefore, the second Hanover policy does not provide coverage because the Estate's lawsuit does not constitute a **Claim** first made during the **Policy Period** of that policy.

4. And the first Hanover policy does not provide coverage because the **Insureds** provided first notice of the Estate's lawsuit more than 90 days after that policy expired.

5. Other terms, conditions, and/or exclusions in the Hanover policies also bar or limit coverage for the **Claim**.

## PARTIES

6. Plaintiff Hanover is an insurance company organized under the laws of the state of New Hampshire with its principal place of business at 440 Lincoln Street, Worcester, Massachusetts.

7. R.W. Dunteman Company is a corporation organized under the laws of Illinois with its principal place of business located in Addison, Illinois.

---

[2] Terms in bold are defined in the Hanover policies.

8. Du-Kane Asphalt Co. is a corporation organized under the laws of Illinois with its principal place of business located in Addison, Illinois.

9. Crush-Crete, Inc. is a corporation organized under the laws of Illinois with its principal place of business located in Addison, Illinois.

10. Paul Dunteman Jr. is an individual who resides in Crystal Lake, Illinois, and he is a citizen of Illinois.

11. Jeffrey Dunteman is an individual who resides in Geneva, Illinois, and he is a citizen of Illinois.

12. Roland Dunteman III is an individual who resides in Hawthorn Woods, Illinois, and he is a citizen of Illinois.

13. Matthew Dunteman is an individual who resides in Lake Zurich, Illinois, and he is a citizen of Illinois.

14. Audrey B. Coffey, as Personal Representative of the Estate of Jane Elizabeth Dunteman – resides in Florida and she is a citizen of Florida. Ms. Coffey is the daughter of Jane Elizabeth Dunteman, and the Estate is currently being probated in the Circuit Court for Broward, County, Florida, where it is known as File No. 17-0001424 in Division 61J. The Estate owns shares in both Du-Kane and Crush Crete. The Estate is named as a Defendant herein only to the extent it is required to be named as a necessary party.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202, as Hanover seeks a declaration of the parties' rights and obligations under the policies issued by Hanover. Jurisdiction is also conferred by 28 U.S.C. § 1332(a), as complete diversity

exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), in that Defendants, Du-Kane, Crush-Crete, and the Dunteman Brothers are residents within this District, and a substantial part of the events or omissions giving rise to this action occurred within this District.

## HANOVER POLICIES

17. Hanover issued two consecutive liability insurance policies to R.W. Dunteman for the following **Policy Periods**: March 31, 2017 to March 31, 2018 (the "2017 Policy"), and March 31, 2018 to March 31, 2019 (the "2018 Policy") (each a "Policy," and, collectively, the "Policies"). Each Policy contains a Maximum Aggregate Limit of Liability of $1,000,000, subject to a $10,000 Retention for Insuring Agreements I.B. and I.C. True and accurate copies of the 2017 Policy and the 2018 Policy are attached hereto as Exhibit A and B, respectively.

18. The Policies contain multiple Coverage Parts, including a Directors, Officers, & Entity Liability Coverage Part (the "D&O Part"), which is the only Coverage Part at issue here.

19. As relevant here, the Policies contain identical terms, conditions, and exclusions, except for the **Policy Period**.

20. The Insuring Agreement set forth in Section I.B. in the D&O Part of the Policies states as follows:

> The **Insurer** will pay on behalf of the **Insured Entity, Loss** which the **Insured Individual** is legally obligated to pay due to a **Claim** first made against the **Insured Individual** during the **Policy Period,** or the Extended Reporting Period if applicable, but only to the extent the **Insured Entity** indemnifies the **Insured Individual** for such **Loss.**

4

21. The Insuring Agreement set forth in Section I.C. in the D&O Part of the Policies states as follows:

> **The Insurer** will pay on behalf of an **Insured Entity, Loss** which the **Insured Entity** is legally obligated to pay due to a **Claim** first made against the **Insured Entity** during the **Policy Period,** or the Extended Reporting Period if applicable.

22. Section III. of the D&O Part of the Policies defines **Claim** to mean:

> A. With respect to Insuring Agreements I.A. and I.B., any:
> 1. Written demand received by an **Insured** for monetary or non-monetary relief including injunctive relief;
> 2. Civil proceeding commenced by the service of a complaint or similar pleading;
> 3. Criminal proceeding commenced by the filing of charges;
> 4. Formal administrative or regulatory proceeding, including a Wells Notice, commenced by the filing of charges, formal investigative order or similar document;
> 5. Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document; or
> 6. Official request for **Extradition**;
>
> against an **Insured Individual** for a **Wrongful Act**, including any appeal therefrom;
>
> 7. Service of a subpoena on an **Insured Individual** identified by name pursuant to a civil, criminal, administrative or regulatory investigation, including when such **Insured Individual** is served with a target letter or similar document; or
> 8. Written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in A.1. through A.7. above; ….
>
> \* \* \*
>
> C. With respect to Insuring Agreement I.C., any:
> 1. Written demand received by an **Insured** for monetary or non-monetary relief including injunctive relief;
> 2. Civil proceeding commenced by the service of a complaint or similar pleading;
> 3. Criminal proceeding commenced by the filing of charges;
> 4. Formal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document; or

5

      5. Arbitration or mediation proceeding commenced by the receipt of a demand for arbitration or mediation or similar document;

against an **Insured Entity** for a **Wrongful Act**, including any appeal therefrom; or

      6. Written request first received by an **Insured** to toll or waive a statute of limitations relating to a potential **Claim** described in C.1. through C.5. above; ….

23. Section III. of the D&O Part of the Policies defines **Related Claims** to mean:

> **Related Claims** means all **Claims** based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damages or events or the same series of facts, circumstances, situations, transactions, results, damage, or events.

24. Section VI. of the Common Policy Terms and Conditions in the Policies provides that all **Related Claims** will be considered a single **Claim** made in the **Policy Period** or Extended Reporting Period in which the earliest of such **Related Claims** was first made or deemed to have been made pursuant to the applicable Coverage Part. Specifically, the Common Policy Terms and Conditions of the Policies provides as follows:

> **VI. RELATED CLAIMS**
>
> With respect to the **Liability Coverage Parts** all **Related Claims** will be considered as a single **Claim** made in the **Policy Period** or Extended Reporting Period in which the earliest of such **Related Claims** was first made or first deemed to have been made pursuant to the applicable Coverage Part. All **Related Claims** are subject to the Limits of Liability, Retention and other terms and conditions applicable to the earliest **Related Claim**.

25. The reporting requirements with respect to the D&O Part in the Policies provide in part as follows:

> **IX. REPORTING**
>
>     A. An **Insured** shall provide the **Insurer** with written notice as soon as practicable after the Chief Executive Officer, Chief Financial Officer, President, Executive Director, In-House General Counsel or any person with the responsibility for the management of insurance

6

claims, or any equivalent position, of an **Insured Entity** becomes aware of a **Claim**, but in no event later than:

1. Ninety (90) days after the effective date of expiration or termination; or

2. The expiration date of the Extended Reporting Period, if applicable.

## THE ESTATE'S LAWSUIT

26. On August 28, 2017, the Estate filed a Verified Complaint for Declaratory Judgment (the "Original Complaint") against Du-Kane in the Circuit Court of DuPage County, Illinois, seeking a declaratory judgment that Jane Dunteman ("Jane") "owned a 24% interest in Du-Kane at the time of her death on March 2, 2017 and invalidating the wrongful 14% reduction in her ownership in 2013." (the "Estate Lawsuit"). A true and correct copy of the Original Complaint is attached hereto as Exhibit C.

27. Du-Kane was served with the Original Complaint in the Estate Lawsuit on or about August 29, 2017.

28. The Estate alleged that Jane was married to Paul Dunteman Sr. ("Paul Sr.") from 1963 until their divorce in 2009.

29. The Estate alleged that, prior to the divorce, Jane owned 24% of the stock of Du-Kane and that, as part of the divorce settlement, it was agreed that Jane and Paul Sr. would retain their respective ownership interests in Du-Kane, which were approximately equal.

30. The Estate alleged that, "[i]n 2013, without her knowledge, permission or consent, and without providing consideration to her, Du-Kane reduced Jane's ownership interest from 24% to 10% …."

31. The Estate alleged that the "14% ownership unilaterally taken from Jane was divided evenly and transferred to her sons: Paul Jr., Jeffrey, Roland, and Matthew."

7

32. The Estate alleged that the Dunteman Brothers allegedly also received an additional 10% in shares in 2013, increasing their ownership stake to 22.5% each.

33. Jane passed away on March 2, 2017.

34. On December 20, 2017, the Estate filed a Verified First Amended Complaint for Declaratory Judgment (the "FAC") in the Estate Lawsuit. A true and correct copy of the FAC is attached hereto as Exhibit D.

35. On or about July 6, 2018, the Estate filed a Motion for Leave to file a Verified Second Amended Complaint for Declaratory Judgment (the "Motion for Leave to File the SAC") based on "written discovery and third-party subpoenas" that "discovered new relevant facts that affect the allegations pled in this matter" in the Estate Lawsuit. The proposed SAC adds as defendants to the Estate Lawsuit Crush-Crete, Inc., Paul Jr., Jeffrey, Roland, and Matthew Dunteman. A true and correct copy of the Motion for Leave to File the SAC is attached hereto as Exhibit E.

36. On July 13, 2018, Du-Kane, Crush-Crete, and the Dunteman Brothers tendered the Motion for Leave to File the SAC to Hanover and sought coverage for it.

37. On July 16, 2018, the Estate filed a Verified Second Amended Complaint for Declaratory Judgment (the "SAC") in the Estate Lawsuit. A true and correct copy of the SAC (without exhibits) is attached hereto as Exhibit F.

38. On January 7, 2019, the Estate filed a Verified Third Amended Complaint for Declaratory Judgment (the "TAC") in the Estate Lawsuit. A true and correct copy of the TAC (without exhibits) is attached hereto as Exhibit G.

39. Defendant Du-Kane first received notice of the Estate Lawsuit during the **Policy Period** of the 2017 Policy, i.e. between March 31, 2017 to March 31, 2018, and no later than when Du-Kane was served with the Original Complaint on or about August 29, 2017.

40. Defendant Du-Kane first received notice of the FAC filed on December 20, 2017 in the Estate Lawsuit during the **Policy Period** of the 2017 Policy, i.e. between March 31, 2017 to March 31, 2018.

41. The 2017 Policy requires the **Insureds** to report any **Claim** as soon as practicable, but in no event later than 90 days after the expiration of the **Policy Period** on March 31, 2018.

42. Du-Kane, Crush-Crete, and the Dunteman Brothers first reported the Estate Lawsuit to Hanover on or after July 13, 2018.

43. Du-Kane, Crush-Crete, and the Dunteman Brothers did not report the Estate Lawsuit prior to July 13, 2018.

## INSURANCE COVERAGE DISPUTE

44. Du-Kane, Crush-Crete, and the Dunteman Brothers seek insurance coverage from Hanover under one or more of the Policies in connection with the Estate Lawsuit.

45. Hanover disputes that coverage exists for the Estate Lawsuit under any of the Policies.

46. An actual, present, and bona fide controversy exists between Hanover and Du-Kane, Crush-Crete, and the Dunteman Brothers with respect to whether there is insurance coverage for the Estate Lawsuit under any of the Policies.

47. A judicial declaration is necessary to establish the parties' rights and duties, if any, under the Policies.

## COUNT I – DECLARATORY JUDGMENT
## (2017 Policy – Untimely Notice)

48. Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 47 as though set forth fully herein.

49. The 2017 Policy requires the **Insureds** to report any **Claim** as soon as practicable, but in no event later than 90 days after the expiration of the **Policy Period** on March 31, 2018.

50. The Estate's Lawsuit constitutes a **Claim** under the Policies.

51. Du-Kane, Crush-Crete, and the Dunteman Brothers first reported the Estate Lawsuit to Hanover on or after July 13, 2018.

52. Du-Kane, Crush-Crete, and the Dunteman Brothers did not report the Estate Lawsuit prior to July 13, 2018.

53. There is no coverage for the Estate Lawsuit under the 2017 Policy because Du-Kane, Crush-Crete, and the Dunteman Brothers reported the Estate Lawsuit more than 90 days after the March 31, 2018 expiration of the 2017 Policy.

## COUNT II – DECLARATORY JUDGMENT
## (2018 Policy –
## No Claim First Made During Policy Period)

54. Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 53 as though set forth fully herein.

55. The Estate Lawsuit is a **Claim** deemed first made during the 2017 **Policy Period** because Du-Kane first received notice of the Estate Lawsuit during the 2017 **Policy Period** when it was served with the Original Complaint filed by the Estate.

56. There is no coverage for the Estate Lawsuit under the 2018 Policy because the Estate Lawsuit is not a **Claim** first made during the **Policy Period** of the 2018 Policy.

**COUNT III – DECLARATORY JUDGMENT**
**(2017 and 2018 Policies – Definition of "Insured Individual")**

57. Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 56 as though set forth fully herein.

58. Pursuant to the Policies' D&O Part Insuring Agreements, coverage is only available for **Loss** on behalf of an **Insured Individual** arising from a **Claim** against such **Insured Individual**, subject to the terms and conditions of the Policies.

59. **Insured Individual** is defined under Section III. of the Policies' D&O Parts to mean in relevant part: "any past, present or future **Executive** or employee …, intern or volunteer of the **Insured Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity** …."

60. There is no coverage for the Estate Lawsuit to the extent the Dunteman Brothers were not acting solely in their capacities as **Executives** of **Insured Entities** (Du-Kane and Crush-Crete) during the relevant **Policy Periods**.

**COUNT IV – DECLARATORY JUDGMENT**
**(2017 and 2018 Policies – Definition of "Loss")**

61. Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 60 as though set forth fully herein.

62. Pursuant to the Policies' D&O Part Insuring Agreements, coverage is only available for those amounts that fall within the Policies' definition of **Loss**.

63. **Loss** is defined under Section III. of the Policies' D&O Parts, as amended by the Illinois State Amendatory Endorsement, to mean in relevant part:

> **Loss** means **Defense Expenses** and the amount the **Insured** is legally obligated to pay as a result of a **Claim** including:
>
> A. Monetary judgments, awards or settlements, pre-judgment and post-judgment interest and compensatory damages;

11

B. Vicariously assessed punitive or exemplary damages or the multiple portion of any multiplied damage award to the extent that such damages are insurable under the laws of the State of Illinois; or

C. Civil fines or penalties assessed against an **Insured Individual**, including civil penalties assessed against an **Insured Individual** pursuant to the Foreign Corrupt Practices Act (15 U.S.C. 78dd-2(g)(2)(B)), if and to the extent such fines or penalties are insurable under the law of the jurisdiction in which such fines and penalties are assessed.

However, **Loss** does not include:

1. Any amounts which an **Insured** is obligated to pay as a result of a **Claim** seeking relief or redress for non-monetary damages including injunctive relief;

2. Any amount deemed uninsurable by law;

3. Taxes, except a tax imposed upon an **Insured Individual** in connection with the bankruptcy, receivership, conservatorship or liquidation of an **Insured Entity** but only if:

    a. Such tax is insurable under the law pursuant to which this Coverage Part is construed; and

    b. An **Insured Individual** is not indemnified for such tax by an **Insured Entity** or any other person or organization.

4. **Investigative Costs** (other than costs arising from a **Security Holder Derivative Demand**) incurred by an **Insured** in the defense or investigation of any action, proceeding or demand that was not a **Claim** even if such amount also benefits the defense of a covered **Claim** or such action, proceeding or demand that subsequently gives rise to a **Claim**;

5. Any amount which represents or is substantially equivalent to an increase in the consideration paid by an **Insured Entity** in connection with its purchase of any securities or assets; or

6. Any amount not indemnified by the **Insured Entity** for which an **Insured Individual** is absolved from payment by reason of any covenant, agreement or court order.

64. Coverage is not available for the Estate Lawsuit to the extent any **Insured** incurs any amount in connection with the Estate Lawsuit that falls outside the definition of **Loss** in the Policies.

### COUNT V – DECLARATORY JUDGMENT
### (2017 and 2018 Policies – Exclusion A.3.)

65. Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 64 as though set forth fully herein.

66. Exclusion A.3. of the Policies bars coverage for any **Loss** in connection with any **Claim**:

> Conduct
>
> Based upon, arising out of or in any way related to:
>
> a. Any deliberate, dishonest, fraudulent act or omission, or willful violation of any statute or regulation by an **Insured**; or
>
> b. An **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;
>
> However, this exclusion shall not apply to **Defense Expenses** unless and until a final, non-appealable judgment or adjudication in any underlying proceeding or action establishes that an **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

67. Coverage for the Estate Lawsuit is barred to the extent that Exclusion A.3. applies.

### COUNT VI – DECLARATORY JUDGMENT
### (2017 and 2018 Policies – Public Policy)

68. Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 67 as though set forth fully herein.

69. Coverage is not available for the Estate Lawsuit to the extent prohibited by public policy.

## COUNT VII – DECLARATORY JUDGMENT
## (2017 and 2018 Policies – Known Loss/Loss in Progress Doctrine)

70. Hanover incorporates by reference each and every allegation set forth in the preceding paragraphs 1 through 69 as though set forth fully herein.

71. Coverage is not available for the Estate Lawsuit to the extent prohibited by the known loss, "fortuity," and/or the "loss in progress" doctrines.

## COUNT VIII – DECLARATORY JUDGMENT
## (2017 and 2018 Policies – "Allocation" and "Other Insurance" Provisions)

72. Hanover incorporates by reference each and every allegation set forth in the proceeding paragraphs 1 through 71 as though set forth fully herein.

73. Section X. of the Policies' D&O Part provides:

> **ALLOCATION**
>
> If an **Insured** incurs **Loss** on account of any **Claim** and such **Claim** includes both covered and non-covered matters, coverage with respect to such **Claim** shall apply as follows:
>
> A. One hundred percent (100%) of **Defense Expenses** on account of the **Claim** will be considered covered **Loss** provided that this shall not apply to any **Insured** for whom coverage is excluded pursuant to Exclusion IV. B. 4. Employment Practices or Section XIV. B. Representations and Severability; and
>
> B. The **Insurer** shall fairly allocate all remaining loss that an **Insured** incurred on account of such **Claim** between covered **Loss** and uncovered loss based upon the relative legal exposure of the parties to such matters.

74. Section XII. of the Policies' D&O Part, as amended by the Illinois State Amendatory Endorsement, provides:

> **OTHER INSURANCE AND INDEMNITY**
>
> If other valid and collectible insurance is available to the **Insured** for **Loss** covered under this Coverage Part (other than a policy that is issued

14

Case: 1:19-cv-01979 Document #: 1 Filed: 03/22/19 Page 15 of 16 PageID #:15


specifically as excess of this Coverage Part), the insurance provided by this Coverage Part will contribute on a pro rata basis with that other valid and collectible insurance, regardless of whether or not such insurance is primary, contributory, excess, contingent or otherwise. In such instance, pro rata means that the **Insurer** will not be liable for a greater proportion of such **Loss** than the applicable Limit of Liability stated in this Coverage Part bears to the total applicable limit of liability of all valid and collectible insurance of the **Insured** against such **Loss**. If an **Insured Individual** is entitled to indemnification from an **Outside Entity,** the insurance provided by this Coverage Part shall be excess of such indemnification.

75. To the extent coverage for the Estate Lawsuit is not otherwise barred entirely (which Hanover denies), coverage for the Estate Lawsuit is limited to the extent Section X. – Allocation and Section XII. – Other Insurance, as amended by the Illinois State Amendatory Endorsement, of the Policies' D&O Part applies.

WHEREFORE, Plaintiff, The Hanover Insurance Company, prays that this Court enter a judgment in its favor and against Defendants, awarding the following relief:

a. A declaration that Hanover has no duty to defend or indemnify Du-Kane, Crush-Crete, or the Dunteman Brothers, or any other **Insured** in connection with the matters reported to Hanover under the Policies;

b. For costs of suit incurred herein; and

c. For such other and further relief at law or in equity that the Court deems just and proper.

## **RESERVATION OF RIGHTS**

The Policies contain terms, conditions, and exclusions that may be relevant to the Estate Lawsuit but that are not currently implicated by this declaratory judgment action. Nothing in this Complaint should be construed as a waiver by Hanover of any coverage defenses at law, in

equity, or under the Policies. Hanover continues to reserve all rights with respect to any claim for coverage made under the Policies where appropriate, and waives none.

## JURY DEMAND

Hanover demands a jury trial.

DATED: March 22, 2019     The Hanover Insurance Company

By: /s/ Ryan M. Henderson
      One of its Attorneys

Ommid C. Farashahi (6237045)
Michael T. Skoglund (6284010)
Ryan M. Henderson (6243097)
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, Illinois 60606
Ph.: 312-762-3100
Fax: 312-762-3200
Email: ofarashahi@batescarey.com
Email: mskoglund@batescarey.com
Email: rhenderson@batescarey.com

2175322