# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| **THE HANOVER INSURANCE COMPANY,** | |
| **Plaintiff,** | **Case No. 19-cv-1979** |
| | Judge Mary M. Rowland |
| **v.** | |
| **R.W. DUNTEMAN COMPANY, DU-KANE ASPHALT CO., CRUSH-CRETE, INC., PAUL DUNTEMAN JR., JEFFREY DUNTEMAN, ROLAND DEUNTEMAN III, MATTHEW DUNTEMAN and AUDREY B. COFFEY, as Personal Representative of the ESTATE O F JANE ELIZABETH DUNTEMAN.** | |
| **Defendant(s).** | |

## MEMORANDUM OPINION & ORDER

Before the Court are the Parties' cross motions for judgment on the pleadings. For the reasons stated below, the motion for judgment on the pleadings filed by Defendants R.W. Dunteman Company ("Dunteman"), Du-Kane Asphalt Co. ("Du-Kane"), Crush-Crete, Inc. ("Crush-Crete") (Dkt. 35) is denied, and the motion filed by Paul Dunteman, Jr., Jeffrey Dunteman, Roland Dunteman, III, and Matthew Dunteman (collectively, the "Dunteman Brothers")[1] (Dkt. 38) is denied. Plaintiff The Hanover Insurance Company's ("Hanover") motion for judgment on the

---

[1] Dunteman, Du-Kane, Crush-Crete, and the Dunteman Brothers are collectively referred herein as "Defendants."

pleadings (Dkt. 36) is granted as to Counts I and II. Hanover's remaining Counts are dismissed as moot.

**BACKGROUND**

This lawsuit arises from an insurance coverage dispute between the Dunteman Brothers, Du-Kane, Dunteman, and Crush-Crete on the one side, and Hanover on the other. The relevant facts are as follows.

**1. The Estate Lawsuit**

Hanover issued two consecutive Directors, Officers, and Entity Liability Insurance Policies to Defendants for the period of March 31, 2017 to March 31, 2018 (the "2017 Policy"), and March 31, 2018 to March 31, 2019 (the "2018 Policy"). (Dkt. 1 ¶ 17). Each policy contains identical provisions.

On August 28, 2017, during the 2017 Policy, Audrey B. Coffey, as Personal Representative of the Estate of Jane Elizabeth Dunteman, filed a complaint for declaratory judgment in the Circuit Court of DuPage County (the "Original Complaint"). (Dkt. 37, 2). The Original Complaint alleged that Jane Dunteman was married to Paul Dunteman until their divorce in 2009. (Dkt. 35, Ex. 3 ¶¶ 4, 17). Prior to the divorce, Jane owned 24% of the stock of Du-Kane. (*Id*. at ¶¶ 11-24). As part of the divorce settlement, Jane and Paul agreed that they would each retain their approximately equal ownership interests in Du-Kane. (*Id*.). In 2013, Paul's shares were divided evenly and transferred to his sons. (*Id*. at ¶¶ 26-29) The Original Complaint alleged that without her knowledge, permission, or consent, and without providing consideration to her, Jane's ownership interest was reduced from

24% to 10%. (*Id*.). The Original Complaint further alleged that "[t]he 14% ownership unilaterally taken from Jane was divided evenly and transferred to her sons: Paul Jr., Jeffrey, Roland, and Matthew." (*Id*. at ¶ 27). The Dunteman brothers each received an additional 10% in shares of Du-Kane, increasing their ownership to 22.5% each. (*Id*. at ¶ 28). Jane passed away in March 2017. (*Id*. at ¶ 30). On July 14, 2017, Du-Kane filed a Statement of Claim against Jane's estate, seeking $521,472 of unjust enrichment. (*Id*. at ¶¶ 32-33). Du-Kane asserts that Jane received incorrect distributions because she never owned 24% of the business, and that this mistake was corrected in 2013. (*Id*.).

The Original Complaint brought a single count for declaratory judgment. In that count, Coffey alleged that "Du-Kane's attempt to reduce Jane's ownership by 14% was done without the knowledge or consent of Jane, and more importantly, it was done without providing consideration to her for the sale of the stock. As such, the attempted transfer is void." (Dkt. 35, Ex. 3 ¶ 36). The Original Complaint requested that the court "find and enter a declaratory judgment ordering that Jane was the rightful owner of 24% ownership interest in Du-Kane at the time of her death on March 2, 2017 and invalidating the wrongful 14% reduction in her ownership interest in 2013." (*Id*. at ¶ 37).

On December 20, 2017, also during the 2017 Policy, Coffey filed a First Amended Complaint for Declaratory Judgment ("FAC"). (Dkt. 35, Ex. 4). On July 16, 2018, based on written discovery and third party-subpoenas and during the 2018 Policy, Coffey filed a Second Amended Complaint ("SAC"). (Dkt. 35, Ex. 5). The

SAC added Crush-Crete and the four (4) individual Dunteman Brothers as defendants. It also brought several new allegations, including: (i) that Jane was not receiving regular dividends from Du-Kane and Crush-Crete (*Id.* at ¶¶ 57-61); (ii) that revenues of Du-Kane and Crush-Crete had "suspiciously" declined after Jane died (*Id.* at ¶¶ 62-67); (iii) that the Dunteman Brothers "are either diverting Crush-Crete's business and/or revenue to [Dunteman] or engaging in price fixing to depress earnings" in order to "[f]reeze out the Estate as a minority shareholder by not paying distributions to it and devaluing its shares prior to a fair value analysis" (*Id.* at ¶ 70); (iv) the Dunteman Brothers were failing to hold shareholder meetings for Du-Kane and Crush-Crete (*Id.* at ¶¶ 71-74); and (v) that the Dunteman Brothers failed to repay a 2005 loan of $1,350,000 made to them by Du-Kane (*Id.* at ¶¶ 75-79).

Based on the new allegations, the SAC contained the following new counts: Count II: Minority Shareholder Oppression and Dissipation in violation of 805 ILCS 5/12.56 (Du-Kane); Count III: Minority Shareholder Oppression and Dissipation in violation of 805 ILCS 5/12.56 (Crush-Crete); Count IV: Breach of Fiduciary Duties (Dunteman Brothers); Count V: Fraud (Dunteman Brothers); Count VI: Conspiracy to Defraud and Breach Fiduciary Duties (Dunteman Brothers). The SAC contained the same count for declaratory judgment against Du-Kane, which asked the court for an order "invalidating the wrongful 14% reduction in [Jane's] ownership in 2013." (Dkt. 35, Ex. 5 ¶ 84).[2]

---

[2] On January 7, 2019, Coffey filed a Third Amended Complaint, the operative complaint in the underlying suit. (Dkt. 35, Ex. 6). The Parties' coverage dispute focuses on the SAC as it was the first

Du-Kane, Crush-Crete, and the Dunteman Brothers first reported the Estate lawsuit to Hanover on July 13, 2018. Hanover denied coverage. According to Hanover, the Original Complaint constitutes a "Claim" as defined in the insurance policy. Hanover asserts that the Defendants were required to report the lawsuit within 90 days of the expiration of the 2017 Policy and their failure to do so makes their claim untimely. Hanover therefore believes it need not provide coverage to Defendants. Defendants argue that the Original Complaint did not constitute a "Claim," and they were not required to inform Hanover of the lawsuit until the filing of the SAC, which asserted new causes of action against new Defendants. Thus, according to Defendants, their notice was timely and Hanover has a duty to defend them in the underlying litigation.

Hanover filed a complaint in this Court seeking a declaratory judgment that they have no duty to defend Defendants and provide coverage.[3] (Dkt. 1). In response, Defendants Du-Kane and Crush-Crete filed one Answer and Counterclaims (Dkt. 19), and the Dunteman Brothers filed a separate Answer and Counterclaims (Dkt. 21). Both documents assert Counterclaims for breach of contract (Count I) and a violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (Count II). The Court dismissed the Section 155 claim in a previous ruling. (Dkt. 56).

---

complaint reported to Hanover. The SAC and the Third Amended Complaint are substantively the same in terms of coverage issues.

[3] Hanover's Complaint brings eight counts for declaratory judgment. (Dkt. 1). Hanover states that if the Court grants its motion for judgment on the pleadings for Counts I and II, the remaining counts in its Complaint are moot. (Dkt. 36 at 2, fn. 3).

## 2. Relevant Policy Provisions

As mentioned above, Hanover issued two consecutive insurance policies. Each policy contains identical provisions. The relevant policy provisions are as follows:

Section III defines Claim to mean in relevant part:

> A. With respect to Insuring Agreements I.A. and I.B, any:
>    1. Written demand received by an Insured for monetary or non-monetary relief including injunctive relief;
>    2. Civil proceeding commenced by the service of a complaint or similar proceeding; …
>    against an Insured Individual for a Wrongful Act, including any appeal therefrom; …
>
> C. With respect to Insuring Agreement I.C., any:
>    1. Written demand received by an Insured for monetary or non-monetary relief including injunctive relief;
>    2. Civil proceeding commenced by service of a complaint or similar proceeding; …
>    against an Insured Entity for a Wrongful Act, including any appeal therefrom; …

(Dkt. 35, Ex. 1 at 22). The Policies state that "Wrongful Act means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted or allegedly committed or attempted by:

> A. With respect to Insuring Agreements I.A. and I.B., an Insured Individual in his or her capacity as such or any other matter claimed against an Insured Individual solely in his or her status as such; or
>
> B. With respect to Insuring Agreement I.C., an Insured Entity.
>
> All Related Wrongful Acts shall be considered a single Wrongful Act and all Related Wrongful Acts will be deemed to have occurred at the time the first of such Related Wrongful Acts occurred whether prior to or during the Policy Period."

(Dkt. 35, Ex. 1 at 24).

The Policies define Related Wrongful Acts: "Related Wrongful Acts means Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event, result, injury or decision." (Dkt. 35, Ex. 1 at 24). The Policies similarly define Related Claims: "Related Claims means all Claims based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damages or events or the same series of facts, circumstances, situations, transactions, results, damages, or events." (*Id*.).

In addition to the definition of Related Claims, Section VI of the Policies states:

> With respect to the Liability Coverage Parts all Related Claims will be considered a single Claim made in the Policy Period or Extended Reporting Period in which the earliest of such Related Claims was first made or first deemed to have been made pursuant to the applicable Coverage Part. All Related Claims are subject to the Limits of Liability, Retention and other terms and conditions applicable to the earliest Related Claim.

(Dkt. 35, Ex. 1 at 5).

Finally, Claims must be reported pursuant to Section IX of the Policies, which states:

> A. An Insured shall provide the Insurer with written notice as soon as practicable after the Chief Executive Officer, Chief Financial Officer, President, In-House General Counsel or any person with the responsibility of the management of insurance claims, or any equivalent person, of an Insured Entity becomes aware of a Claim, but in no event later than:
>
>> 1. Ninety (90) days after the effective date of expiration or termination; or

2. The expiration of the Extended Reporting Period, if applicable….

(Dkt. 35, Ex. 1 at 29).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. *See* Fed. R. Civ. Pro. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) 'is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court may take judicial notice.'" *Archer Daniels Midland Co. v. Burlington Ins. Grp.*, 785 F.Supp.2d 722, 726 (N.D. Ill. 2011) (quoting *Cincinnati Ins. Co. v. Contemporary Distrib., Inc.*, No. 09 C 2250, 2010 WL 338943, at *2 (N.D. Ill. Jan. 26, 2010)).

"A motion for judgment on the pleadings under rule 12(c) of the federal rules of civil procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (quoting *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014)). As such, "the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Id*. A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955,

1966 (2007) Put differently, "a 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (citation and quotation marks omitted). "All reasonable inferences are drawn in favor of the non-movant." *Id.* (citing *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015)). Ultimately, a court will grant a motion for judgment on the pleadings only if "no genuine issues of material fact remain to be resolved and…the [moving party] is entitled to judgment as a matter of law." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 2012); *see also Hartford Fire Ins. Co. v. Thermos LLC*, 146 F.Supp.3d 1005, 1012 (N.D. Ill. 2015).

## DISCUSSION

The parties agree Illinois law governs their dispute. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In Illinois, the construction of an insurance policy is a question of law. *County Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311, 856 N.E.2d 338, 342 (Ill. 2006). An insurance policy is to be construed as a whole, "giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 362, 860 N.E.2d 307, 314 (Ill. 2006). "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (Ill. 2004). "Although insurance policies are construed liberally in favor of coverage, this

rule of construction comes into play only when the policy language is ambiguous." *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311, 856 N.E.2d 338, 342 (Ill. 2006). In a declaratory judgment action such as this one, when the issue is whether the insurer has a duty to defend the insured in an underlying lawsuit, courts ordinarily look to the allegations of the underlying complaint and compare those allegations to the relevant provisions of the insurance policy. *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 502-03 (2010) (collecting cases).

The Policies at issue here are claims-made policies, which provide the Insureds with coverage for Claims by third parties that are both made and reported during the applicable time periods.[4] Hanover argues that judgment should be entered in its favor because the Original Complaint constitutes a Claim made under the 2017 Policy, but not reported until after the reporting deadline. Although the SAC was filed during the 2018 Policy, and the Insureds reported the lawsuit during the 2018 Policy, Hanover claims that it need not provide coverage because the SAC is not a separate Claim but an extension of the original lawsuit filed in 2017. Even if the Court found the SAC to be a separate claim, Hanover argues that the Policies' unambiguous aggregation provisions require that the various pleadings be

---

[4] "By way of background, conventional liability insurance policies or 'occurrence' policies 'insure against a negligent or other liability-causing act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured'…Because an occurrence policy can expose an insurance company to indefinite future liability, companies often also offer a less expensive option known as a 'claims-made' policy, which generally limits liability to claims made and reported during the policy period." *Pacific Ins. C. v. Eckland Consultants, Inc.*, No. 00 C 2140, 2001 WL 1388297, at *3 (N.D. Ill. Nov. 5, 2001) (internal citations omitted). Coverage under a claims-made policy is triggered when: (1) a claim is made during the policy period, and (2) the claim is reported during the policy period (or, as is the case here, during some set period after the expiration of coverage). *Id.* (citing *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340 (1999)).

considered a single claim first made during the 2017 Policy. Either way, Hanover argues that Defendants' reporting was untimely and it therefore need not provide coverage to Defendants.

Defendants argue that neither the Original Complaint nor the FAC constitute a Claim under the Policies, and that even if they did, the SAC alleged new and unrelated causes of action such that it constituted a new claim. Defendants thus seek coverage under the 2018 Policy as they believe they timely reported the new claim. The Dunteman Brothers and Crush-Crete also argue that they were not named as defendants until the SAC, so the SAC must be a separate claim as to them. The Court shall address each argument in turn.

## 1. The Original Complaint Constitutes a Claim

Defendants argue that the Original Complaint and the FAC are not Claims, as defined by the Policies, because they do not allege any wrongful conduct. (Dkt. 35 at 7-9). As noted above, "Claim" is defined as a "[c]ivil proceeding commenced by the service of a complaint or similar proceeding…against an Insured Entity for a Wrongful Act, including any appeal therefrom." (Dkt. 35, Ex. 1 at 22). Wrongful Act, in turn, is defined as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted, or allegedly committed or attempted…" (*Id*. at 24). Importantly, the definition of Claim does not focus on causes of action or claims for relief, it focuses on Wrongful Acts and underlying conduct.

Defendants state that the Original Complaint only included one count for declaratory judgment, and the only action alleged was that Du-Kane "reduced" Jane Dunteman's shares.[5] According to Defendants, this mere reduction is not a Wrongful Act, therefore the Original Complaint is not a Claim. However, the Defendants misread the allegations of the Original Complaint. The Original Complaint alleges that "Du-Kane's attempt to reduce Jane's ownership by 14% was done without the knowledge or consent of Jane, and more importantly, it was done without providing consideration to her for the sale of the stock," and that Jane's ownership interest was "unilaterally taken from her by Du-Kane." (Dkt. 35, Ex. 3 ¶¶ 36, 37). The Original Complaint also requested that the court "find and enter a declaratory judgment ordering that Jane was the rightful owner of 24% ownership interest in Du-Kane at the time of her death on March 2, 2017 and invalidating the *wrongful* 14% reduction in her ownership interest in 2013." (*Id*. at ¶ 37) (emphasis added). The Original Complaint is not merely alleging that Jane's ownership interest was reduced inadvertently. Rather, the Original Complaint alleges wrongful action on the part of Du-Kane. Regardless of whether the relief was declaratory in nature, the alleged conduct fits squarely within the definition of Wrongful Act. Thus, the Court finds the Original Complaint constitutes a Claim under the Policies.

---

[5] Defendants first argue that the only statement "in the Original Complaint or [FAC] that could conceivably be considered to allege any Wrongful Act is that Du-Kane 'reduced' Jane's ownership interest…" (Dkt. 35 at 8). They claim this action is not a Wrongful Act. Defendants then argue that the Original Complaint "does not allege any specific action by Du-Kane whatsoever." (*Id*.) The Court is unpersuaded. The Original Complaint alleges Du-Kane "without providing compensation" "unilaterally" and "wrongfully" took Jane's ownership interest. This alleged conduct qualifies as Wrongful Acts under the plain language of the Policies.

The Dunteman Brothers raise an additional argument in favor of coverage—that the Policies' definition of Wrongful Act separates out coverage for the Insured Entity and for the Insured Individuals.[6] The Dunteman Brothers note that the Original Complaint only named an Insured Entity, Du-Kane, as a defendant and argue that a Claim against an Insured Entity does not give rise to a Claim against an Insured Individual, given the definition of Wrongful Act. The Court finds this argument unpersuasive. First, and as discussed below, the Policies' unambiguous aggregation provisions refute that argument. Second, the Dunteman Brothers' argument is contradicted by the plain reading of the Policies. The Policies simply require there be a Claim for a Wrongful Act against *either* an Insured Individual *or* the Insured Entity to trigger the reporting requirement. (Dkt. 35, Ex. 1 at 22). That happened here. A Claim for a Wrongful Act was filed against an Insured Entity, Du-Kane, under the Policy that covers all of the Defendants. The distinction noted by the Dunteman Brothers is one without a difference.[7] The Original Complaint constituted a Claim that triggered Du-Kane's reporting requirement under the 2017 Policy.

---

[6] "Wrongful Act means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, breach of duty committed or attempted or alleged committed or attempted by:

    A. With respect to Insuring Agreements I.A. and I.B., an **Insured Individual** in his or her capacity as such or any other matter claimed against an Insured Individual solely in his or her status as such; **or**

    B. With respect to Insuring Agreement I.C., an **Insured Entity**.

All Related Wrongful Acts shall be considered a single Wrongful Act and all Related Wrongful Acts will be deemed to have occurred at the time the first of such Related Wrongful Acts occurred whether prior to or during the Policy Period." (Dkt. 35, Ex. 1, 24) (emphasis added).

[7] Dunteman Brothers further assert that if their reading of the Policies is incorrect, it is because the language of the Policies is ambiguous. The Court disagrees and finds that Defendants are "attempting to create ambiguity where none exists." *Continental Cas. Co. v. Howard Hoffman and Associates*, 2011 Ill App (1st) 100957 ¶ 42.

## 2. The SAC Is Not a Separate Claim

Defendants argue that the SAC is a separate and distinct Claim, unrelated to the Original Complaint. The SAC was filed in July 2018 and the Defendants reported the SAC to Hanover in July 2018. According to Defendants, because the SAC is a separate Claim made during the 2018 Policy and timely reported, Hanover is required to provide coverage. Hanover counters that the SAC is not a separate Claim, but part of a single proceeding—the Estate lawsuit. Even if it is a separate Claim, Hanover argues that the two Claims are related and should thus be treated as a single Claim under the Policies' aggregation provisions. The Court will first address whether the SAC is a separate Claim and will then turn to whether the Claims are related.

First, the Court finds that the Estate lawsuit is a single proceeding and thus a single Claim. The Policies define Claim to include a "[c]ivil proceeding commenced by service of a complaint or similar pleading." (Dkt. 32, Ex. 1 at 22) A lawsuit is clearly a civil proceeding, and a "complaint 'commences' an action as a whole." *Community Foundation for Jewish Educ. v. Federal Ins. Co.*, 16 Fed. App'x 462, 466 (7th Cir. 2001) ("if someone is asked what sort of civil proceeding is set in motion by the service of a complaint or similar pleadings, it is difficult to imagine any answer other than a lawsuit."). This definition of "Claim" refers to the entire civil proceeding that follows service of the initial complaint. *Id.*

Accordingly, the amended complaints, including the SAC, are not distinct or additional Claims. The SAC is part of a single proceeding initiated by the filing of

the Original Complaint. A plain reading of the Policy language "precludes finding that amendments to a complaint made against the insured could commence a 'civil proceeding' which had already been commenced by the filing and service of a complaint. Otherwise the same lawsuit against the insured would qualify as two different civil proceedings…".[8] *Community Foundation for Jewish Educ.*, 16 Fed. App'x at 466. Moreover, Courts consistently hold that an amendment to a complaint constitutes a continuance of the litigation, rather than a separate civil proceeding. *See Community Foundation for Jewish Educ.*, 16 Fed. App'x at 466; *Ameriwood Ind. v. Am. Casualty Co.*, 840 F. Supp. 1143, 1152 (W.D. Mich. 1993) ("the amendment of the…complaint within the policy period does not constitute a new filing of the case"); *see also Great Am. Ins. Co. v. Sea Shepherd Conservation Soc'y*, No. C13-1017RSM, 2014 WL 2170297, at *6 (W.D. Wash. May 23, 2014) ("Courts consistently hold that the addition of new causes of action in a civil proceeding, ordinarily through an amended complaint, does not give rise to a new Claim."). The

---

[8] The Dunteman Brothers cite to dicta from *Community Foundation* to argue that the SAC is a separate Claim against them because they were not named in the Original Complaint. 16 Fed. App'x. 462, 467 (7th Cir. 2001). *Community Foundation* states:

> If the insured is brought into litigation for the first time through the amended complaint, the claim is obviously new to that entity; thus it is a claim first made…In its Second Amended Complaint, the Board added a new defendant, Federation. Suppose Federation had purchased a policy similar to the one the Foundation had with Federal. Although the original lawsuit would have pre-existed the Federation's (hypothetical) policy, the amendment would be a claim first made against Federation after the policy was in place. In such cases, the proceeding is a new proceeding with respect to the insured, and courts accordingly hold that the amended complaints were covered even though the original complaint was filed before the insurance policy went into effect. *Id.*

The Dunteman Brothers believe that language supports their argument that the SAC is a new claim against them. However, Defendants' situation is different from the hypothetical in *Community*. In *Community*, the Federation was not an *insured* under the Foundation's policy. Here, Du-Kane, Crush-Crete, and the Dunteman Brothers are all Insureds under the same Policies. And the Insureds through Du-Kane were brought into the litigation with the filing of the Original Complaint. The addition of more Insureds via the SAC does not change the fact that the Claim, as defined by the Policies, arose with the filing of the Original Complaint.

reasonable interpretation of "Claim" so defined is that it encompasses the entire Estate lawsuit that was initiated by the Original Complaint filed during the 2017 Policy.

Defendants argue that the SAC alleged new Wrongful Acts against new parties, and therefore a new Claim arose. However, the Wrongful Acts language must be read in the context of the unambiguous definition of Claim. And a Claim here is defined as a "civil proceeding commenced by service of a complaint." (Dkt. 35, Ex. 1 at 22). Because a civil proceeding can only be commenced once, a new Claim did not arise with the filing of the SAC. The SAC is a part of a complaint that is twice amended—that is not a new Claim under the Policies.

Second, even if the SAC was a separate Claim, the Policies' aggregation provisions require the SAC to be treated as a Related Claim to the Original Complaint. A Related Claim is defined as "all Claims based upon, arising from or *in any way related to the same facts, circumstances, situations, transactions, results, damages* or events or the same series of facts circumstances, situations, transactions, results, damage or events." (Dkt. 35, Ex. 1 at 24) (emphasis added). The Policies further state that "all Related Claims will be considered a single Claim made in the Policy Period or Extended Reporting Period in which the earliest of such Related Claims was first made or deemed to have been made." (*Id*. at 5). The Policies have parallel provisions for Related Wrongful Acts, which are broadly defined as "Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event, result, injury or

decision." (*Id*. at 24). Similarly, the Policies state that "[a]ll Related Wrongful Acts shall be considered a single Wrongful Act and all Related Wrongful Acts will be deemed to have occurred at the time the first of such Related Wrongful Acts occurred whether prior to or during the Policy Period." (*Id*.) The plain language of these four provisions is expansive, and these definitions sweep broadly. The Policies' use of the word "any" in defining Related Wrongful Acts and Related Claims confirms that only a minimal connection is required. *See People ex rel. Scott v. Silverstein*, 94 Ill. App. 3d 431, 434 (1st Dist. 1981) ("The word 'any' has broad and inclusive connotations.").

Defendants argue that the SAC is not a Related Claim because the SAC includes new and unrelated factual allegations. Defendants state: "There is no connection between the facts asserted in the Original Complaint…and the facts asserted in the Second Amended Complaint." (Dkt. 35 at 9). Defendants claim that the Original Complaint only concerns Jane's ownership interest as a matter of law, whereas the SAC includes "corporate governance matters, including, but not limited to, distributions, suppression of profits, failure to hold shareholder meetings, and failure to repay a loan." (*Id*. at 10). The Dunteman Brothers argue that the SAC is "replete with new Claims" including "waste, mismanagement, self-dealing, oppression, and fraud, which warrant relief under the Illinois Bureau Corporations Act and common law fraud." (Dkt. 38-1 at 9). The Dunteman Brothers also note that the wrongful reduction of shares alleged in the Original Complaint occurred during Jane's lifetime, while many of the factual allegations in the SAC, including the

claims of waste, mismanagement, self-dealing, oppression, and fraud, occurred several years after Jane's death. According to Defendants, the new claims in the SAC and the temporal distance between the conduct alleged in the Original Complaint and the SAC suggests the allegations are not related.

As noted above, the plain language of the relevant definitions is broad. Here, the Original Complaint and the SAC arise out of a common set of facts, circumstances, and events—Defendants' alleged shortchanging of Jane and then her estate. The Original Complaint and the SAC also allege common damages. The Estate's lawsuit alleges that the Defendants reduced Jane's shares unilaterally, without her consent or knowledge, and without consideration. After conducting discovery, the Estate then added other causes of action that lead to the same end: defrauding Jane and then her estate of the value of her shares. Although some of the allegations in the SAC occurred several years after the initial reduction in Jane's ownership, the allegations taken together evidence a scheme and consistent course of conduct by the Dunteman brothers to defraud the estate. *See Lloyd's Syndicate 3624 v. Biological Res. Ctr. of Ill., LLC*, 341 F. Supp. 3d 841, 845-46 (N.D. Ill. 2018) (ten underlying cases were considered a single, related claim because the allegations all arose out of a single course of conduct involving the insured's mishandling of decedents' bodies); *Cont'l Cas. Co. v. Howard Hoffman & Assocs.*, 2011 IL App (1st) 100957 (later claims related to earlier claims, despite multiple and separate instances of fraud, because the acts were interrelated, stemmed from a common embezzlement plan, and involved the same modus operandi). The

additional allegations in the SAC are consistent with the Original Complaint's allegations that Jane's ownership interest had been wrongfully reduced. *See Vita Food Prod. v. Navigators Ins. Co.*, No. 16 C 8210, 2017 WL 2404981, at *6 (N.D. Ill. June 2, 2017) (granting motion for judgment on the pleadings because a lawsuit and earlier demand letter constituted related claims as they both alleged breach of fiduciary duties to shareholders and relied on the same evidence of a fraudulent scheme). The Original Complaint and the SAC are clearly Related Claims.

The Policies' aggregation provisions are not negated by the fact that new legal claims were added against new defendants. Defendants contend that since the Original Complaint only named Du-Kane, and new allegations that named new defendants were added to the SAC, the Original Complaint and SAC cannot be related. The Court disagrees. Based on the definition of Related Claims within the specific Policies at issue, it is irrelevant whether the Original Complaint and SAC are different in terms of damages sought, legal theories advanced, venue, and parties. *Federal Ins. Co. v. Illinois Funeral Director's Ass'n.*, No. 09 C 1634, 2010 WL 5099979, at *6-8 (N.D. Ill. Dec. 8, 2010) (finding that, under a substantially similar definition of related claims, it was irrelevant whether the two claims at issue named new parties or involved different theories, and ultimately holding the claims were related). Under the Policies, the only relevant inquiry is whether the Claims are "based upon, arising from or in any way related to the same facts, circumstances, situations, transactions, results, damages or events or the same

series of facts, circumstances, situations, transactions, results, damage, or events." (Dkt. 35, Ex. 1 at 24). That inquiry is satisfied here.

Accordingly, even if the SAC is a separate Claim, it constitutes a Related Claim that the Insureds were required to report after the filing of the Original Complaint. As noted above, Related Claims are "considered a single Claim made in the Policy Period or Extended Reporting Period in which the earliest of such Related Claims was made or first deemed to have been made." (Dkt. 35, Ex. 1at 5). Here, the earliest of the Related Claims was the Original Complaint and it was filed during the 2017 Policy Period.

### 3. The Policies' Reporting Requirements Are Strictly Construed

Finally, Defendants argue that even if the Original Complaint constitutes a Claim or Related Claim, they should not be barred from coverage because their notice was timely. (Dkt. 35 at 11-12). Defendants assert that the 2017 Policy requires the Defendants to report any Claim "as soon as practicable, but in no event later than 90 days after the expiration of the Policy Period on March 31, 2019." (Dkt. 35, Ex. 1 at 29). According to Defendants, Illinois courts have interpreted the phrase "as soon as practicable" to mean "within a reasonable time…depending on the facts and circumstances of each case." *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 238 Ill. 2d 177, 201 (2010). Defendants claim that Illinois courts "have recognized that an insured's reasonable belief of non-coverage under a policy may be an acceptable excuse for the failure to give timely notice, even where the delay is lengthy." *Brotherhood Mutual Insurance Company v. Roseth*, 177 Ill. App. 3d 443,

449 (1ˢᵗ Dist. 1988) (court excused a two-year delay in notifying an insurer because the insured reasonably believed their homeowner's policy would not cover an accidental shooting outside their home). Defendants invoke *Brotherhood Mutual Insurance Company* to argue that their delay should be excused because they reasonably believed the Original Complaint was not a Claim as it failed to allege Wrongful Acts.

However, the cases relied on by Defendants involve occurrence policies, not claims-made policies. Courts have repeatedly stressed the differences between occurrence policies and claims-made policies, especially in the context of notice requirements. *See, for example Home Ins. Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 742 (7th Cir. 2007) ("Illinois gives insureds a 'reasonable' time to notify insurers under occurrence policies. A claims-made policy imposes a more rigid notice requirement, because it links coverage to the claim and notice rather than to the injury") (internal citations omitted); *Pacific Ins. Co. v. Eckland Consultants, Inc.*, No. 00 C 2140, 2001 WL 1388279, at *3 (N.D. Ill. Nov. 5, 2001) (unlike occurrence policies, "Illinois law is clear that the issue of prejudice is irrelevant in the context of a 'claims-made' insurance policy"). Courts strictly construe notice requirements in claims-made policies and view notice requirements as valid conditions precedent. *Executive Risk Indem., Inc. v. Chartered Benefit Servs., Inc.*, No. 03 C 3224, 2005 WL 1838433, at *6 (N.D. Ill. July 29, 2005) ("Given the purpose and function of the reporting requirement in a claims-made policy, such reporting requirements are strictly construed.") (internal quotation marks omitted); *St. Paul*

*Reinsurance Co. v. Williams & Montgomery, Ltd.*, No. 00 C 5037, 2001 WL 1242891, *4 (N.D. Ill. Oct. 17, 2001) ("expiration dates [for claims-made policies] are to be strictly construed"); *Montgomery Ward & Co. Inc. v. The Home Ins. Co.*, 324 Ill. App. 3d 441 (2001) ("[a] notice provision [in an insurance contract] is a valid condition precedent and not a mere technical requirement that the insured is free to overlook or ignore with impunity").

The Court sees no reason to deviate from this construction, and the cases cited by Defendants are inapposite. The filing of the Original Complaint triggered the Insureds' notice requirement under the 2017 Policy. Defendants failed to timely notify Hanover of the Claim. Accordingly, Hanover need not provide coverage.

## **CONCLUSION**

For the reasons stated above, Hanover had no duty to defend the insureds and need not provide coverage. The Court grants Hanover's motion for judgment on the pleadings (Dkt. 36) for Counts I and II. The Court dismisses the remaining Counts as moot. Defendants' motions for judgment on the pleadings (Dkt. 35; Dkt. 38) are denied.

E N T E R:

Dated: March 17, 2020

_____

MARY M. ROWLAND
United States District Judge